JAMES G. BARKER ET AL. v. TEMPLE LUMBER COMPANY ET AL.

No. 5028. Decided April 1, 1931.
(37 S. W., 2d Series, 721.)

*W. F. Goodrich, R. E. Minton, Minton & Minton, Davis & Davis, W. T. Davis, S. W. Blount* and *A. D. Lipscomb,* for appellants.

The power of attorney from heirs of J. H. Rogers to Arthur and Barker, a necessary link in plaintiffs' claim of title, is, if valid, merely a contract under which Arthur and Barker could, by service and payments, none of which have been shown to have been rendered or paid, have acquired an equitable title to an undivided interest in the land in controversy on recovering it for the benefit of said heirs, which has never been done nor attempted. Taylor v. Taul, 88 Texas, 665, 32 S. W., 866, affirming; Taylor v. Taul, 31 S. W., 1085; Mealy v. Lipp, 40 S. W., 825-6; Cooper v. Mayfield, 57 S. W., 49-50; Hazlett v. Harwood, 80 Texas, 511; Brown v. King, 111 Texas, 335; Compare Garner v. Boyle, 97 Texas, 463.

There is not any evidence in the record that during the fifteen years from the date of the power of attorney in 1911 to the judgment in this cause in October, 1926, the said Arthur and Barker, or anyone claiming under them, had ever performed any service for said heirs or paid any delinquent taxes for them.

The present suit was not brought on behalf of said heirs, but only on behalf of the donees of said power of attorney and Hancock, claiming under such donees.

It is a roving commission, purchased by assuming an obligation to

hunt up and arouse slumbering claims of title and to pay such obligations of the donors for delinquent taxes as are incident to successful assertion of such claims. This was certainly not a deed vesting a legal title in any particular property. If valid, and services had been performed under it, equitable claims might have been based upon it as a contract, perhaps; but no such service or other equity is shown.

Whatever may be said of the necessity in other types of actions, for service of citation on defendant to establish a *lis pendens,* it is clear that, in statutory suits of trespass to try title to land, where both land and defendant are within the territorial jurisdiction of the court, the judgment against the defendant is binding on all persons purchasing from him after the filing of the suit. R. S. of Texas, 1925, art. 7391 (article 4811, R. S. 1879); R. S. of Texas, 1925, art. 1971 (article 1181, R. S. of 1879); Mealy v. Lipp, 91 Texas, 182, 42 S. W., 544; Fisher v. Shropshire, 147 U. S., 142-3; 38 C. J., 29, notes 85 and 86.

When defendant in a suit of trespass to try title, two days suit is filed against him, and before citation, signs and acknowledges a purported conveyance of the land to his brother-in-law in trust, under whom, for thirty years thereafter, the land does not appear ever to have been rendered for taxes, nor otherwise claimed, and there is no proof of the so-called trustees payment of the recited consideration or of his knowledge of or acceptance of the deed, but the defendant has himself proceeded, during the three years pendency of litigation, to make full defense on his own behalf and finally has settled the suit, consenting to a decree operating as a rescission of the executory sale to himself, which was his only basis of claim, it will not from mere registration of the deed be presumed in favor of those contracting with the heirs of such trustee that the so-called trust deed was delivered and accepted by him before citation of or entry of appearance by such defendant. Tuttle v. Turner, 28 Texas, 773; U. M. Ins. Co. v. Campbell (Ill.), 35 Am. Rep., 170.

The old statute allowed of two suits by plaintiff in trespass to try title. The revised statutes of 1879 made the change, and also introduced the provision as to the effect of commencement of suit as *lis pendens,* making the result binding on all asserting claims acquired from a defendant after the filing of suit. Batts Ann. Statutes, art. 5275, note 14,658. Clearly it was intended that plaintiff should be bound by the judgment and that there should be no such absurdity as requiring plaintiff to do his litigation all over again at the pleasure of defendant who chose to make a conveyance, or pretended conveyance, and at the same time make full defense in his own name without disclosing the fact that he had parted with all claim of title, or had put some relative in the position to make such claim.

The statutes of limitation of three, five and ten years give title to one in adverse possession, unless suit be "instituted" within the period.

Articles 5507, 5590 and 5510, R. S. That word is construed as having reference to the filing of the petition. Yet, "institute" is a word which might be understood as meaning something more extensive than "commence." "Commence" is universally understood as meaning "to initiate," "to begin," "to take the first step in a procedure." "Institute" is sometimes used in that sense, but only of things that come into effect as soon as they are begun. It is more usually synonymous with "establish," "set up," and "build up." However, we think the word "institute" was clearly used in the sense of "commence" in the limitation statutes, and it has been so construed by the courts, except in those cases in which the plaintiff on filing his petition, gave such instruction to the clerk as to issuance of citation as would indicate that he did not intend in good faith the institution of a suit to be fully prosecuted—as where he ordered stay of citation.

The courts obeyed, therefore, the statutory mandate in respect of limitation statutes. There is no reason why they should decline to obey it in respect of its more emphatic less ambiguous provisions as to the effect of a judgment in a suit of trespass to try title, at least, unless the Supreme Court, having its attention called to the language of the statute, has constructed it as requiring that citation be issued and served before the action can be regarded as commenced within the meaning of the statute.

The sub-vendee, under an executory sale of land, is not a necessary party to rescission of such executory sale, and the rescission is effectual against him, except to preclude his equity of redemption, if he has any, which must be asserted in a reasonable time and with offer to do equity. Bunn v. City of Laredo (Com. App.), 245 S. W., 426; Hamblen v. Folts, 70 Texas, 135; Estes v. Browning, 11 Texas, 248; Kennedy v. Embry, 72 Texas, 390; Thomson v. Robinson, 93 Texas, 170.

*James G. Barker* and *John Hancock,* for appellees.

It is well settled that a right of rescission of an executory conveyance is not absolute. In order to exercise said right all of the equities must be with him, and same cannot be exercised until notice of said intention is given, and demand made for the payment of the consideration due, and not even then are the equities in favor of the vendee.

If Bennett did attempt to rescind his conveyance to Damon, he had no right to do so, because one-third of the consideration had been paid and he did not demand of Damon the payment of his notes, and did not give to him notice of his intention to rescind. The rule is well settled in this state, that, under such circumstances, demand must have been made upon the notes, and, if not paid, notice must be given of the intention to rescind. Kennedy v. Embry, 10 S. W., 88 (Sup. Ct.); Walls v. Cruse, 235 S. W., 199; West Lumber Co. v. Henderson, 238 S. W., 710.

Damon having paid one-third of the consideration was entitled to a demand for the payment of the vendor's lien notes and notice of Bennett's

election, if any, to rescind. This record shows that said demand was not made and said notice not given.

Not only was it necessary for Bennett to make such demand and give such notice to Damon, but he was also required to make and give the same to Rogers, the vendee of Damon, whose deed was filed for record prior to said alleged rescission. Tom v. Wollhoefer, 61 Texas, 277; Henderson v. Samuels, 25 S. W., 470; Huffman v. Mulkey, 14 S. W., 1029; Levy v. Persons, 131 S. W., 446.

If the right of rescission does not exist under the facts predicated upon the original deed, the original grantor and grantee cannot orally agree to a rescission and bind the sub-grantee. Huffman v. Mulkey, 14 S. W., 1029; Erwin v. Daniels, 79 S. W., 61; Simms v. Wright, 56 S. W., 110.

There is another reason why Bennett did not have the right to rescind. His title was challenged by an action in court to which Benentt himself was made a party. He agreed in said action with the plaintiffs that their title was good, and his bad, as to all of the land except 320 acres, which was less than Damon had paid him for. Would anyone contend that under such a state of facts Bennett had the right to rescission of his deed to Damon. Austin v. Ewell, 25 Texas Supl., 404.

The rule is abundantly established that an attorney has no authority to compromise and settle his client's claim for less than the whole of it. He is employed to prosecute or defend the claims of his client, not to surrender them.

This is especially true when the same attorneys purport to represent, adversely, other parties to the same action. In the instant case it appears that Goodrich and Blount were acting for Damon that is, if Damon was represented at all in said agreement. The testimony indicates that Damon was not represented at all, but said attorneys acted upon what they understood through Davis to be Damon's wishes. At least, in order to be charitable to them, no other contention can be urged than that they were not representing Damon and that Damon was not a party to said agreement. However, if it be insisted that they were representing Damon, they were also representing Bennett and compromised the suit by permitting the Gibbons heirs to take judgment on said agreement against Damon, and Bennett took judgment against the Gibbons heirs for 320 acres, one-third of which went to Goodrich and Blount. In other words, although Damon had paid to Bennett one-third of the consideration for all of said survey, yet they permitted Damon to take nothing and Bennett and his attorneys received 320 acres of land, which was less than one-third of the entire survey previously sold to Damon. The equitable thing to have done, if a settlement on said basis was made, would have been to have given Damon said 320 acres which he had more than paid for.

We are familiar with the rule that judgments are entitled to full faith

and credit and cannot be collaterally attacked, unless their invalidity appears upon the face of the judgment, or on jurisdictional grounds. It is apparent from the face of this judgment that the attorneys, if they were attorneys for Damon, agreed to surrender his entire cause of action, and give to Bennett approximately one-third of the land he had previously conveyed to Damon, and for which he had been paid. They surrendered the balance of his claim to the Gibbons heirs.

The agreement upon which said judgment was rendered is absolutely void as to Damon, because unauthorized by him. His attorneys were without power to make it, if he was represented by attorney in the making of same. The record affirmatively shows that he did not authorize the making of said agreement. Even if Davis was his agent he had no authority as a general agent to surrender and convey lands belonging to Damon.

It may be insisted that said judgment is *res adjudicata* and cannot be collaterally attacked. Such is the general rule.

If said judgment is void as to Damon, the question of *lis pendens* becomes immaterial.

The judgment rendered in favor of Bennett against the Gibbons heirs gave him a record title to same. He had previously conveyed by warranty deed all of said survey to Damon and Damon had conveyed same to Rogers. Therefore, whatever title Damon acquired immediately passed to and vested in Rogers, under whom appellees hold.

Regardless of the effect of *lis pendens* and the limitation title of Bennett, appellees were entitled upon the record title, through said judgment, to the interest awarded to them herein out of the 320 acres decreed in the Gibbons heirs judgment to Bennett..

G. H. Rogers having purchased the land in controversy subsequent to the filing of the suit against his grantor, H. G. Damon, but prior to service of citation on Damon, said purchase is not affected by *lis pendens*, under either the common law or statutory rule.

The sub-vendee, under an executory sale of land, is a necessary party to rescission of such executory sale, unless it clearly appears that no part of the consideration has been paid and that equity would enforce a rescission against all parties, and there isn't any equities existing in favor of the sub-vendee. Under the facts of the instant case, viz., where one-third of the consideration had been paid and before maturity of the balance the title of the original vendor had been challenged and he agreed that his title was defective, and no demand was made by the holder of the notes for payment and notice of rescission was not given, the original vendor was not entitled to rescind, and a legal rescission binding the sub-vendee was not shown.

*Ben H. Powell* and *Ocie Speer* filed a rief in this case amicus curiae.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

On December 23, 1889, C. M. Bennett, who claimed a limitation title to 1,111 acres of land in Sabine county, as surveyed and patented to John W. Gibbons in 1893, conveyed the same by general warranty deed to H. G. Damon in consideration of the payment of one-third of the purchase money in cash and the balance in notes executed by Damon, the vendor's lien being expressly retained to secure the payment thereof.

On September 3, 1890, the heirs of John W. Gibbons, the original patentee, sued Damon in trespass to try title to recover this land. Two days thereafter, and before citation was served upon Damon, he conveyed the land by general warranty deed to his brother-in-law, Rogers, the deed being made to the latter "as trustee". The instrument did not state the purpose of the trust, the beneficiaries thereof, nor set forth the powers of the trustee.

Damon answered in the suit on September 6, 1891, and on January 16, 1892, Bennett and wife were made parties and answered at the February term, 1893.

On February 10, 1894, judgment was entered based upon a written agreement of the parties to the suit, said agreement being signed by the attorneys for the various parties. This agreement, which was made the judgment of the court, awarded all of the land in controversy to the Gibbons heirs except 320 acres, the title to which was vested in Bennett, and Damon was by said judgment divested of any title to the land.

The notes executed by Damon to Bennett were due December 23, 1890, and 1891, respectively, and were never paid. After the rendition of the judgment above referred to, the notes were mailed to Damon's representative in Corsicana; for some reason they were not delivered, but returned to the sender, who produced them upon the trial of this case.

On September 11, 1894, Bennett conveyed one-third of the 320 acres awarded him in said suit to Blount and Goodrich, and one-third to Gellatly on March 29, 1895. After his death his heirs conveyed the remaining one-third to Vickers on July 5, 1902. These tracts through mesne conveyances vested in defendants in error.

It is not shown that either Damon or Rogers, or anyone claiming under them, ever rendered the land for taxes or did anything indicating acts of ownership until 1911, when the heirs of Rogers gave a power of attorney, under which plaintiffs in error claim an interest in the land in controversy. The power of attorney did not specifically describe this land. It merely covered any land the grantors might then own in Sabine County. The first conveyance asserting any interest in this specific land through Damon or Rogers was a quit claim deed executed by the Rogers heirs to J. W. Minton in 1921, more than a quarter of a century after the rendition of the judgment hereinabove referred to and the conveyance of the land by the original vendor to other parties.

Defendants in error, and their vendors, have during the period of

years since the rendition of the judgment aforesaid actively asserted claim to the land by payment of taxes, filing numerous transfers, recording mortgages, and paying large sums as a consideration for the transfer of the land from one to another.

Plaintiffs in error contend that in as much as Damon had not been served with citation in the suit by the Gibbons heirs at the time he conveyed the land to Rogers, the latter was not a purchaser pendente lite. That Rogers, not being a party to the suit, was not bound by the agreed judgment subsequently entered therein, and therefore the power of attorney executed by the Rogers heirs vested a present interest in the land in controversy to Arthur and Barker, under whom plaintiffs in error claim.

It is a correct proposition of law that Rogers was not affected with notice as a purchaser pendente lite; as when he bought, his grantor Damon had not been served with process in the suit filed by the Gibbons heirs. Hanrick v. Gurley, 93 Texas, 469, 54 S. W., 347, 55 S. W., 119, 56 S. W., 330; Sparks v. Taylor, 99 Texas, 411, 90 S. W., 485, 6 L. R. A. (N. S.) 381.

The conveyance from Bennett to Damon was executory. Damon could only perfect his title to the land by paying the purchase money notes in accordance with the terms of his agreement. Upon his failure to do so Bennett had the right to rescind the sale and convey the property to others. Likewise Rogers held no title to this property except one conditioned upon the discharge of the obligation for the purchase money notes. Farmers Loan Co. v. Beckley, 93 Texas, 267, 54 S. W., 1027; Hale v. Baker, 60 Texas, 217.

The undisputed evidence shows that the purchase money notes executed by Damon were never paid, and that Bennett exercised his right of rescission by conveying the lands to other parties. It is our conclusion that this rescission was binding both upon Damon and his vendee, Rogers, to the extent that neither vendee could successfully maintain an action of trespass to try title against those claiming under the original vendor. Kennedy v. Embry, 72 Texas, 387, 10 S. W., 88; Crafts v. Daugherty, 69 Texas, 477, 6 S. W., 850; Masterson v. Cohen, 46 Texas, 520; Bunn v. Laredo (Texas Com. App.), 245 S. W., 426, Id. (Texas Civ. App.), 208 S. W., 675.

But, it is asserted that those claiming by deeds executed by Bennett after his conveyance to Damon were required to prove notice to Rogers of Bennett's intention to rescind such contract. Defendants in error's answer to this proposition is that they should not be required to assume the burden of proving notice to Rogers of Bennett's intention to rescind his executory contract with Damon because Rogers and his heirs acquiesced in such rescission by failing to assert any character of ownership in the property for more than seventeen years and until all the parties connected

with the transaction, or who were likely to know anything about it, were dead.

We do not deem it necessary to decide whether Bennett's rescission of the executory contract was binding upon Rogers, in the absence of any proof that he received notice of Bennett's intention to rescind, to the extent of depriving him of any rights in the property, but prefer to rest our decision upon the proposition that plaintiffs in error, who were not in possession of the land, will not be permitted to recover the same in an action of trespass to try title against the original vendor, or any one holding under him, so long as a portion of the purchase money remains unpaid. McPherson v. Johnson, 69 Texas, 484, 6 S. W., 798; Harris v. Catlin, 53 Texas, 8; Jackson v. Palmer, 52 Texas, 427.

But it is argued that Bennett's title had failed to all of the land except the 320 acres awarded him in the suit of the Gibbons heirs and that it would therefore be inequitable to require those holding under Rogers to pay the unpaid purchase money notes when title to such a large portion of the land had failed. Such position might be consistently maintained if this action had been an equitable one in which plaintiffs in error set up the failure of title to a portion of the land conveyed to Rogers and asked for an adjustment of the purchase money with an expressed willingness to pay such sum as might be determined by the court to be fair and just under the circumstances. Plaintiffs in error have not proceeded in this manner, but have obtained a recovery of the land in a straight action of trespass to try title, ignoring the outstanding unpaid purchase money notes and all equities arising in connection therewith. They have merely assumed that the value of the portion of the land to which title has failed would exceed or exactly offset the amount due the original vendor upon the unpaid purchase money notes, together with the interest thereon over a long period of years. Those claiming title under Bennett who have paid a valuable consideration for this property are entitled to a judicial adjustment of the equities existing between Bennett and Rogers. Those claiming under the latter would only be entitled to recover the land upon paying whatever sum might be judicially determined to be due on the unpaid purchase money notes, taking into consideration the failure of the title to a portion of the land conveyed.

To hold otherwise would be to determine that an attempted rescission of a vendor, where a portion of the purchase money remains unpaid, without notice of the vendee, would give the vendee a greater right than that possessed by him if such rescission had not been attempted. If Bennett had not rescinded the executory contract with Damon by conveying the land to others, those claiming under Rogers could not have recovered it from him in an action of trespass to try title brought by them. They might, in an equitable proceeding, have perfected their title to the land without paying any sum on the unpaid purchase money, but this would

only be true because of a judicial ascertainment that the value of the land to which title was defective equaled or exceeded the amount of principal and interest due the original vendor on the unpaid purchase money notes. They could not, however, ignore this question and recover the land in action of trespass to try title in complete disregard of the equities existing between them and the original vendor. McPherson v. Johnson, supra.

Since plaintiffs in error were not entitled, in this character of action, to recover any of the land in controversy, the judgment of the Court of Civil Appeals reversing the judgment of the trial court and rendering judgment in favor of defendants in error is a correct one, and should be affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.