**R. R. MORRISON, Jr., Appellant,**

v.

**L. A. PARISH et al., Appellees.**

**No. 7605.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 1, 1964.

Rehearing Denied Dec. 15, 1964.

Neal Birmingham, Linden, for appellant.

Boyet Stevens. Daingerfield, for appellees.

CHADICK, Chief Justice.

This is a trespass to try title action. A summary judgment for the plaintiffs was rendered in the trial court and is affirmed.

Mrs. Lula J. Connor, a widow, borrowed $15,000.00 from the State Bank of Omaha, Omaha, Texas, on August 6, 1960. To secure payment of the loan she executed and delivered a Deed of Trust to R. G. Moore, Trustee, conveying a 390 acre tract of land, the subject of this suit. In less than two months thereafter, " * * * in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other valuable consideration * * * ", Mrs. Connor as grantor executed a General Warranty Deed

by its terms conveying the 390 acre tract of land to R. R. Morrison, Jr., Trustee. On the same day this deed was dated, October 24, 1960, Morrison appeared at the State Bank of Omaha, attached the Deed to a draft for $15,000.00, drawn on R. P. Davis, payable to Mrs. Connor, and directed the bank to send the draft with deed attached to the First National Bank of Shreveport, Louisiana, for collection. Morrison also instructed the Bank to credit the proceeds of the draft to Mrs. Connor's checking account, after deducting the unpaid balance of her $15,000.00 indebtedness to the Bank. The Bank forwarded the draft for collection, and on November 5, 1960, it was returned unpaid. The Bank returned the Deed to Morrison.

Mrs. Connor, as seller, entered into a Sales Contract with Virgil Walters, as purchaser, on the 7th day of March, 1961, agreeing to sell 200 acres off of the west side of the 390 acre tract. This instrument, besides being signed by Mrs. Connor and Walters, was also signed by R. R. Morrison, Jr., who is described therein as Agent for Mrs. Connor. In the early morning of May 13, 1961, Mrs. Connor died testate in Dallas, Texas. At about 11:00 o'clock, the morning of the day of Mrs. Connor's death, Virgil Walters filed the Sales Contract for record in the office of the County Clerk of Morris County, at Daingerfield, Texas. Legal counsel acting in Walters' behalf on June 21, 1961, wrote a letter to Dr. Robert B. Connor, respectfully requesting that Dr. Connor and L. A. Parish, Executors of the Estate of Lula J. Connor, comply with the terms of the Sales Contract.

R. R. Morrison, Jr., Trustee, on September 14, 1961, executed and delivered to Virgil Walters a warranty deed to the east 200 acres of the 390 acre tract. The instrument recites receipt by Morrison of a cash consideration of $4,000.00, and the further consideration of $5,000.00 to be paid in installments to Morrison, secured by the reservation of a vendor's lien, as well as a deed

of trust lien on the land conveyed. Both this deed (Morrison to Walters) and the earlier deed (Mrs. Connor to R. R. Morrison, Jr., Trustee), were filed for record the same day, September 27, 1961.

An affidavit filed in the summary judgment proceeding by Morrison says: " * * I admit and recognize the title to Mrs. Lula S. Connor, deceased, in the real property described in the plaintiff's petition, and will stipulate that Mrs. Connor be considered a common source of title in such suit. However, I further state that prior to her death, Mrs. Lula S. Connor conveyed to me as trustee for a then undisclosed beneficiary the lands in question by a General Warranty Deed * * * and the undersigned claims absolute title in such property by the said deed as trustee for an undisclosed beneficiary."

The pleadings of the parties will be noticed, when material. A resume of the factual events has been given. The trial court judgment awarded a recovery of title and possession of the 390 acres to L. A. Parish and Dr. Robert B. Connor, Independent Executors of the Estate of Lula J. Connor, deceased, and to Dr. Robert B. Connor, individually. Virgil Walters has not appealed from the judgment. This appeal is prosecuted by R. R. Morrison, Jr., alone.

█ The appellees by counterpoint assert that the trial court judgment should be affirmed, as the pleadings, affidavits and documents on file show that no genuine issue exists as to material facts. Argument is made that the only factual conclusion permissible is that Mrs. Connor's Deed of October 24, 1960, was never delivered to Morrison, in the sense that delivery is understood in land conveyancing. The trial court's judgment as to Morrison can not be rested upon this theory. The Deed from Mrs. Connor to Morrison was in Morrison's possession, was signed, acknowledged, and recorded. In the absence of proof to the contrary this combination

of facts raise a presumption of delivery.[1] The draft transaction, Morrison describing himself as Mrs. Connor's Agent in the Sales Contract, the filing of the Deed after her death, etc., at most create a fact issue, and delivery becomes a question of fact appropriate for determination in a trial of the merits.

Morrison conveyed 200 of the 390 acre tract to Walters by warranty deed; the record presented limits the title that he can claim to be now vested in him to the residual 190 acres. This appeal perforce is concerned with Morrison's title, possession or rights in the residual acreage. The points of error briefed necessitate a further examination of the title, possessory rights, etc., conveyed by Mrs. Connor's deed to Morrison, Trustee. Morrison's affidavit recognizes the title of Mrs. Connor, and shows that at the time the affidavit was filed, he claimed title to the acreage as "Trustee for an undisclosed beneficiary". His affidavit eliminates any claim of title benefit or right of possession in himself in any capacity, except as a Trustee. Evidence explaining the nature and purpose of the trust created may be received and considered by the trial court.[2]

 Since it is established by the record that the land was not conveyed to Morrison for his individual use and benefit this case does not confront the court with the question that arises when a deed is made to a grantee as trustee, but the nature and purpose of the trust is not in evidence.[3] The Morrison affidavit says the trust set up by the deed was for a beneficiary that

was not disclosed at the time the deed was made, or as expressed in the language of the affidavit "for a then undisclosed beneficiary". Morrison asserts title to the 190 acre residue as Trustee "for an undisclosed beneficiary". This construction of the affidavit gives latitude only for a conclusion that Mrs. Connor's Deed failed to create an expressed trust. The beneficiary is indefinite.[4] An expressed trust is " * * a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another. * * * It is customary to think of three persons as connected with every trust, namely, the settlor, the trustee, and the cestui que trust. But since, where the settlor declares himself a trustee, settlor and trustee are one and the same person, a trust may exist with only two parties."[5] The proof produced by this affidavit does not show an identifiable cestui que trust or beneficiary existed at the time the deed was made; the existence of a beneficiary is an indispensable element of an expressed trust, and in the absence of a beneficiary the effort to create such trust aborts.[6]

If the affidavit might be construed as a statement by Morrison that the deed he took from Mrs. Connor did not on its face disclose the beneficiary, but that he intended by the language used to raise the inference that Mrs. Connor had disclosed to him, and that he knew and could make known the identity of the beneficiary when it suited his purpose, still Morrison can not prevail. Again the beneficiary is indefinite.

1. Deeds, 19 Texas Jurisprudence 2d 379, Sec. 96 and 97.

2. Studebaker Bros. Manufg. Co. v. Hunt, (Tex.Civ.App.) 38 S.W. 1134, writ refused; Union Pac. Ry. Co. v. Durant, 95 U.S. 576, 24 L.Ed. 391; Johnson v. Calnan, 19 Colo. 168, 34 P. 905; Foster v. Treadway, 98 Ark. 452, 136 S.W. 934. See also Annotations in 137 A.L.R. 460 on Designations of Grantee as "Trustee", and Trusts and Trustees (Bogert), Sec. 88.

3. See Barker v. Temple Lumber Co., Tex. Com.App., 12 S.W.2d 175, (reversed 120 Tex. 244, 37 S.W.2d 721 on other grounds, without discussing this question).

4. 1A Trusts & Trustees (Bogert) 91, Sec. 162.

5. 1 Trusts and Trustees (Bogert), P. 1, Sec. 1.

6. 1A Trusts & Trustees (Bogert) 84, Sec. 161.

This is for the reason that the record does not show a beneficiary in existence or that a beneficiary was designated capable of qualifying as such.[7]

■ Morrison by his own admission claims *no title or interest in the 190 acres*, except the title that reposes in him by virtue of his Trusteeship. As the record stands, he is the repository of the bare legal title to the land, and there is no proof that an express trust came into existence. Under such circumstances Morrison is cast by law into the relationship of a Trustee of a resulting trust; he is such as a result of the failure of the expressed trust to materialize. Mrs. Connor and those claiming under her are as a matter of law the beneficiary of this trust created by law.[8] It clearly appears that as a result of the facts shown the law imposes a trusteeship upon Morrison and that he holds title to the 190 acres for the benefit of Mrs. Connor's estate and devisee.

■ The appellant by appropriate points of error urge that the trial court judgment is erroneous because the appellees could not recover title under their pleading of a statutory trespass to try title action in ordinary form. They argue that an action to cancel Mrs. Connor's deed to Morrison must have been plead and proved as a matter of law as a prerequisite to the judgment entered. It is now settled law that owners of a superior equitable title, such as the appellees show here, may recover under the ordinary averments of the statutory trespass to try title action.[9] The record shows the appellees' equitable title is superior to Morrision's bare legal title.

The judgment of the trial court will be affirmed.

7. See generally 1A Trust and Trustee (Bogert) 84, Chap. 10, The Selection of a Competent Cestui Que Trust.

8. The law applicable is stated in understandable fashion in Trusts and Trustees (Bogert, 2d Ed.), Sec. 468: "It sometimes occurs that an express trust, created by inter vivos instrument or by will, fails at the date when the trust was intended to begin or later, because of the terms of the trust, the applicable law, or the nature of the beneficiaries or the purposes of the trust. Thus, it may be that the settlor failed to describe any beneficiaries or described them indefinitely, or that his trust purpose was illegal, had already been achieved, or was impossible of accomplishment; or that there was a failure of the consideration for the creation of the trust; or that a beneficiary disclaimed or forfeited his interest.

\* \* \* \* \*

"The Court equity must decide what shall be the disposition of the subject-matter of the trust which has failed. If the transfer in trust was for a consideration paid by the trustee, he is allowed to retain the property because of the certainty that the settlor would have intended such a result and would not have expected a return of the property. There is no threatened unjust enrichment of the trustee, if he is allowed to keep the property.

"But if, as in most cases, the conveyance in trust was voluntary, and there is no express or implied gift of the property to the trustee or another in the event of the failure of the trust, the court decrees a resulting trust for the settlor or his successors. If the trustor was living and the trust failed at its inception, the trust res goes to him. If he was living at the date of the failure, but died before the case was adjudicated, the property should go to his successors by intestacy at the time of his death, or if he left a will to his legatees or devisees under that will."

9. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471 (op. adpt.); Gates v. Coquat (Ct.Civ.App.), 210 S.W.2d 614, no writ; Hall v. Miller (Ct.Civ.App.) 147 S.W.2d 266, er. dism'd, judg. cor; Trespass to Try Title, 56 T.J.2d p. 79, Sec. 10.