ACCEPTED
12-14-00262
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/10/2015 4:55:37 PM
CATHY LUSK
CLERK

## NO. 12-14-00262-CV

## IN THE

## TWELFTH COURT OF APPEALS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/10/2015 4:55:37 PM
CATHY S. LUSK
Clerk

## SITTING AT TYLER, TEXAS

_____

## CHARLES ALFORD AND MARY LOU ALFORD, APPELLANTS

## VS.

## ROBERT THOMAS MCKEITHEN, EOG RESOURCES, INC., AND CENTRAL TEXAS LAND SERVICES, APPELLEES.

_____

Appealed from the 1ST Judicial District Court of
San Augustine County, Texas
Trial Court No. CV-12-9344

---

## BRIEF OF APPELLEE ROBERT THOMAS MCKEITHEN

Noel D. Cooper
Texas Bar No. 00796397
LAW OFFICES OF NOEL D. COOPER
117 North St., Suite 2
Nacogdoches, Texas 75961
Telephone: (936) 564-9000
Telecopier: (936) 715-6022
Email: noelcooper@noelcooper.com
ATTORNEY FOR APPELLEE,
ROBERT THOMAS MCKEITHEN

ORAL ARGUMENT REQUESTED

**NO. 12-14-00262-CV**

**CHARLES ALFORD AND MARY LOU ALFORD,**
**APPELLANTS**

**VS.**

**ROBERT THOMAS MCKEITHEN, EOG RESOURCES, INC., AND**
**CENTRAL TEXAS LAND SERVICES,**
**APPELLEES.**

## IDENTITY OF PARTIES & COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit:

Noel D. Cooper
Texas Bar No. 00796397
LAW OFFICES OF NOEL D. COOPER
117 North St., Suite 2
Nacogdoches, Texas 75961
Telephone: (936) 564-9000
Telecopier: (936) 715-6022
Email: noelcooper@noelcooper.com
ATTORNEY FOR APPELLEE,
ROBERT THOMAS MCKEITHEN

ROBERT THOMAS MCKEITHEN
APPELLEE

Tom Rorie
Attorney at Law
210 North Street
Nacogdoches, Texas 75961
TEL: (936) 559-1188
FAX: (936) 559-0099
Email: trorie@sbcglobal.net
ATTORNEY FOR APPELLANTS,
CHARLES ALFORD AND MARY LOU ALFORD

CHARLES ALFORD AND MARY LOU ALFORD
APPELLANTS

Jason R. Mills
FREEMAN MILLS PC
110 N. College, Suite 1400
Tyler, Texas  75702
TEL:  (903) 592-7755
FAX:  (903) 592-7787
Email: eservicejrm@freemanmillspc.com
ATTORNEY FOR APPELLEES,
EOG RESOURCES, INC. AND
CENTRAL TEXAS LAND SERVICES

EOG RESOURCES, INC.
APPELLEE

CENTRAL TEXAS LAND SERVICES
APPELLEE

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL.............................................................. 2

TABLE OF CONTENTS.................................................................................. 4

INDEX OF AUTHORITIES ............................................................................ 5

STATEMENT OF THE CASE ......................................................................... 7

ISSUES PRESENTED ..................................................................................... 8

STATEMENT OF FACTS................................................................................ 8

SUMMARY OF THE ARGUMENT............................................................... 11

ARGUMENT...................................................................................................12

      Response to           The trial court did not err in
      Appellants' Issue 1:   holding that the mineral reservation
                          was incorporated into the Deed....................12

PRAYER ........................................................................................................ 23

CERTIFICATE OF COMPLIANCE.............................................................. 23

CERTIFICATE OF SERVICE....................................................................... 24

APPENDIX .................................................................................................... 25

# INDEX OF AUTHORITIES

## <u>CASES</u>

*American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842
    (Tex. 1994) ........................................................................................15

*Duhig v. Peavy-Moore Lumber Co., Inc.*, 144 S.W.2d 878
    (Tex. 1940) ........................................................................................16

*Dupnik v. Hermis*, No. 04–12–00417–CV,
    2013 Tex. App. Lexis 2461, 2013 WL 979199
    (Tex. App.—San Antonio March 13, 2013, pet. denied)(mem. op.) ... 18

*Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864
    (Tex. 2007) ........................................................................................12

*Gulf States Utils. Co. v. Low*, 79 S.W.3d 561
    (Tex. 2002) ........................................................................................15

*Harmes v. Arkalatex Corp.* 615 S.W.2d 177
    (Tex. 1981) ........................................................................................15

*Harris v. Windsor*, 294 S.W.2d 798
    (Tex. 1956) ........................................................................................16

*Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323
    (Tex. 2011) ........................................................................................17

*Klein v. Humble Oil & Refining Co.*, 67 S.W.2d 911
    (Tex. Civ. App.—Beaumont 1934), aff'd,
    *Klein v. Humble Oil & Refining Co.*, 86 S.W.2d 1077 (1935)..............16

*Mitchell v. Castellaw*, 246 S.W.2d 163
    (Tex. 1952) ........................................................................................17

*Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493
    (Tex. 1991)........................................................................................15

*Smith v. Allison, 301 S.W.2d 608*
     (Tex. 1956) .................................................................................16

*Spencer v. Eagle Star Ins. Co. of America, 876 S.W.2d 154*
     (Tex., 1994) ................................................................................12

## RULES

TEX. R. APP. P. 44.................................................................................21

TEX. R. CIV. P. 272 .............................................................................12

TEX. R. CIV. P. 273.............................................................................12

TEX. R. CIV. P. 274 ............................................................................12

Tex. R. Civ. P. 279.............................................................................14

# NO. 12-14-00262-CV

## CHARLES ALFORD AND MARY LOU ALFORD,
## APPELLANTS

## VS.

## ROBERT THOMAS MCKEITHEN, EOG RESOURCES, INC., AND CENTRAL TEXAS LAND SERVICES,
## APPELLEES.

## BRIEF OF APPELLEE ROBERT THOMAS MCKEITHEN

COMES NOW, Noel D. Cooper, counsel for Appellee, Robert Thomas McKeithen, hereinafter identified as "Robert" or "McKeithen," in the above numbered cause, and files this Appellee's Brief and would show this Honorable Court as follows:

## STATEMENT OF THE CASE

*Nature of the Case.* McKeithen was the sole heir of Annie and Jack Jessup, two long-time residents of San Augustine County, Texas. Appellants were ranchers and farmers in San Augustine County, and they rented property from the Jessups for their cattle. The purchased the Jessups' property in 2003 to graze their cattle, and they never discussed the mineral estate. A Special Warranty Deed With Vendor's Lien ("the Deed") and a Deed Of Trust were was drawn up to reflect the agreements of the parties, and a mineral reservation was included in one of the legal descriptions. After the fracking boom began in San Augustine County, Appellants

brought suit against Appellees seeking to reform the deeds between Appellants and the Jessups to remove the mineral reservation.

*Course of Proceedings.* All parties moved for summary judgment, and the trial court denied all motions for summary judgment. CR 2:93, 3:87. A jury was selected, and evidence was heard on May 6 and 7, 2014.

*Trial Court Disposition.* A verdict was returned by the jury, and the trial court entered a take-nothing judgment as to all of the Appellants' claims. CR 3:133.

## ISSUES PRESENTED FOR REVIEW

Response to Issue 1: Appellants erroneously contend that the trial court erred in ruling that the mineral reservation in the Warranty Deed With Vendor's Lien was incorporated into the deed. At first review of the record, Appellants' waived this issue at the trial court. Appellants failed to object to the jury charge which included an instruction to the jury regarding mineral reservation, effectively conceding that this was a lost cause for them. However, even had there not been a waiver, the Appellants are incorrect regarding the law as it relates to the Deed.

## STATEMENT OF FACTS

This is a case about a pasture, 117 acres out of 128 acres of pasture, which the Appellants purchased from the Jessups in 2003. RR 3:18,26. For

five or six years, Appellants leased the pasture from Jack and Annie Jessup. RR 3:16-17. In 2002, Annie asked Mary Lou if she knew of anyone who would want to purchase the pasture. RR 3:18. Mary Lou was interested, but the Appellants could not afford the pasture at that time. RR 3:18. The next year, Mary Lou approached Annie about buying the pasture, and they entered into an oral contract for the sale of the pasture for $80,000, or about $684/acre. RR 3:18-20. Mary Lou and Annie never discussed the mineral estate. RR 3:20. Appellants and the Jessups met at the office of a local attorney, and paperwork was drawn up for the sale of the pasture plus the Jessups' house. RR 3:22. Appellants signed a Deed of Trust. RR 3:31-32.

Mary Lou conceded that the mineral estate was not part of Appellant's contract with the Jessups to buy the pasture. RR 3:53. More importantly, she and her husband would have purchased the pasture with or without the mineral estate; they got a great deal on the pasture. RR 3:53. Mary Lou agreed that the contract to purchase the pasture was a handshake deal between people with an ongoing business relationship. RR 3:56. Mary Lou did completely read neither the Deed or the Deed of Trust. RR 3:57.

Robert was the Jessups' nephew and their sole heir. RR 3:59-60. Before Mr. Jessup had passed, Robert was appointed his guardian. RR 3:74.

After the pasture had been sold to the Jessups, Robert was approached about leasing the mineral rights under the pasture, and he leased them. RR 3:68-69. The guardianship proceedings were initiated so that Robert could lease the mineral rights to EOG. RR 3:78. At some point, Mary Lou's daughter-in-law, Brenda, called Mary Lou and told her that Robert had made a deposit of funds that he received from EOG. RR 3:46. Mary Lou called Robert and wanted him to sign a release of lien on the pasture she and her husband bought, and when Robert reviewed the proposed release, it did not release just the lien but also had sneaked in a line by which he would release all of his mineral rights. RR 3:71. Appellants later sued Robert. CR 1:4.

Connie Vaughn worked for Ken Muckleroy as a part-time real estate closer. RR 4:16-17. According to her description of her duties, a real estate closer would meet with the parties in conjunction with a real estate closing, review all of the documentation with them, make sure everything was correct, and the proceed with the parties' signing the documents. RR 4:17. Ms. Vaughn knows that she prepared documents for selling the pasture, but she had no specific recollection of the closing. RR 4:24-25. She reviewed the Exhibit A attached to the Deed. RR 4:29. The earlier instruments from which she obtained the property description would have usually been

brought to her by the property sellers, but she had no memory of whether the Jessups had brought the particular legal description to her. RR 4:35. She agreed that it was possible that the Jessups gave the legal description to her knowing that the mineral reservation was in there. RR 4:36. Ms. Vaughn agreed that the face of the Deed referenced a 1950 instrument with the same mineral reservation, and that if the metes and bounds had not been attached to the Deed, only the reference to the 1950 instrument, the Deed still would have been valid. RR 4:40-41. The attorney who employed Ms. Vaughn, Ken Muckleroy, could not recall meeting with the Jessups and the Alfords, and he had no specific recollections about the transaction which led to this litigation. RR 4:65-66.

## SUMMARY OF THE ARGUMENT

Appellants were poured out of court by a jury of their peers because the causes of action under which they chose to sue McKeithen had no factual support. In their sole ground for appeal, they argue not about those facts or the jury charge but about one ruling made by the trial court. That one complaint boils down to their assertion that the mineral reservation attached to the Deed was not actually incorporated into the Deed. However, Appellants failed to preserve this issue as they did not object to an instruction *on this point* included in the Charge of the Court. This really

was a last-ditch effort as Appellants raised this issue with the trial court at the 11th hour and after their motion for summary judgment had been heard. However, even if they had not waived their sole complaint, Texas case law is firmly against their position, and Appellants fail to address a recent decision from another Texas appellate court which is exactly on point and for which the Texas Supreme Court denied the petition for review. Finally, their request for a remand on damages is frivolous and without merit.

## ARGUMENT

### Response to Appellants' Issue 1: The trial court did not err in ruling that the mineral reservation was incorporated into the deed.

<u>Argument & Authorities</u>

This matter started out as a suit to reform the Deed to remove the mineral reservation, CR 1:4, and evolved to include a claim for trespass to try title. CR 3:88. Only the trespass to try title and reformation claims were submitted to the jury, CRS 2:4,8,9, and the jury found against Appellants on both of these issues. CRS 2:8,9. The jury also found that the Appellants had not utilized due diligence in reviewing the deed. CRS 2:10. Well after all of the parties had filed and had heard their motions for summary judgment and six (6) days before jury selection, Appellants filed a Motion for Court to Construe Document Prior to Evidence and Submission of Issues to Jury In

Trial. CR 3:118-21. The trial court ruled that "under the rules of construction of documents that the language stating a mineral reservation found in the description of a 117 acre tract described as Tract 1 in Exhibit 'A' attached to that deed: Is Incorporated [*sic*] into the Deed." CRS 4-5 (Ex. 1). Appellants' sole issue is that the trial court incorrectly ruled that the mineral reservation was incorporated into the Deed.

### *Appellants Waived This Issue*

Appellants waived this issue for purposes of appeal. "All objections [to the charge] not so presented shall be considered as waived." TEX. R. CIV. P. 272. "Either party may present to the court and request written questions, definitions, and instructions to be given to the jury . . . . A request by either party for any questions, definitions, or instructions shall be made separate and apart from such party's objections to the court's charge." TEX. R. CIV. P. 273. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction on account of any defect, omission, or fault in pleading, is waived unless specifically included the objections." TEX. R. CIV. P. 274. A party must object to an erroneous or defective question, instruction, or definition. *See [Equistar Chems., L.P. v. Dresser-Rand Co., 240 S.W.3d 864](#)*, 868 (Tex. 2007)(holding that failure to

object to an improper instruction waived that issue); *Spencer v. Eagle Star Ins. Co. of America, 876 S.W.2d 154*, 157 (Tex., 1994)(holding an objection is necessary to preserve error on improper instruction).

During the formal charge conference, Appellants' only objections to the Charge of the Court concerned Question No. 3, the Due Diligence issue. RR 4:105-06. Appellants did no object to any other part of the Charge of the Court. RR 4:passim. Thus, the following question was submitted to the jury without objection from Appellants:

QUESTION NO. 1

**Question:**
Have the Alfords proved that they have title to an undivided one-half of the mineral estate beneath Tract One?

**Instruction:**
To establish title, the Alfords must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned.

The Alfords may prevail only on the superiority of their title, not on the weakness of McKeithen's title.

You are instructed that it is undisputed that prior to executing the Deed, the Jessups owned an undivided one-half of the minerals beneath Tract One. The question of fact for you to decide is whether the Deed reserved or conveyed the mineral interest. If it reserved the mineral interest answer "No," and if it conveyed the mineral interest answer "Yes."

You are further instructed that Exhibit A was incorporated into the Deed.

You are further instructed that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed.

**Answer:**
Answer "Yes" or "No." _No_

CRS 2:8 (Ex. 2). Included in the instructions is the following: "You are further instructed that Exhibit A was incorporated into the Deed." *Id.* While Appellants are not specifically complaining about the Charge of the Court, they are complaining about a finding, and they waived this issue by not complaining during the charge conference to an instruction which directly addressed the issue about which they were complaining. There is a large body of case law which has held that a party can waive an entire theory of recovery or damage by not objecting with its omission from the charge. TEX. R. CIV. P. 279; *see Gulf States Utils. Co. v. Low, 79 S.W.3d 561*, 565 (Tex. 2002); *Harmes v. Arkalatex Corp. 615 S.W.2d 177*, 179 (Tex. 1981); *see, e.g., American Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842*, 848 n.12 (Tex. 1994)(holding that defendant waived estoppel defense); *Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493*, 495 (Tex. 1991)(holding that plaintiff waived breach of contract claim). Appellants cannot now come and complain of the trial court's ruling when they did not object to the jury being given this instruction.

### *The Mineral Reservation Was Incorporated Into the Deed*

Irrespective of whether Appellants waived their one complaint on appeal, they never address any of the litany of Texas court decisions interpreting mineral reservations and instead rely totally on general

contract cases. Texas courts "have long since relaxed the strictness of the ancient rules for the construction of deeds, and have established the rule for the construction of deeds as for the construction of all contracts,-that the intention of the parties, when it can be ascertained from a consideration of all parts of the instrument, will be given effect when possible. That intention, when ascertained, prevails over arbitrary rules." *Harris v. Windsor*, 294 S.W.2d 798, 800 (Tex. 1956). "The ultimate purpose in construing a deed is to ascertain the intention of the grantor, and when this intention is ascertained, that construction which carries the intention into effect, when such intention is lawful, governs and controls." *Smith v. Allison*, 301 S.W.2d 608, 614 (Tex. 1956). "The cardinal rule for the construction of deeds is to ascertain the intention of the parties as expressed in the deed." *Klein v. Humble Oil & Refining Co.*, 67 S.W.2d 911, 914 (Tex. Civ. App.—Beaumont 1934), aff'd, *Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077, 1078 (1935). A reservation on the face of the deed only serves to further identify what is included in the metes and bounds. *See Duhig v. Peavy-Moore Lumber Co., Inc.*, 144 S.W.2d 878, 879 (Tex. 1940). Further, the trial court ruled that the Deed was ambiguous. CRS 4. When the court determines that the contract language is ambiguous, the intended meaning of that language becomes a fact issue for the trier of

fact and extraneous evidence may be admitted to help determine the language's meaning. *Italian Cowboy Partners v. Prudential Ins., 341 S.W.3d 323*, 333-34 (Tex. 2011).

The agreement of the parties was to purchase the pasture. RR 3:18-20. Would anyone, reading the entire document which was filed with the San Augustine County Clerk, have had any doubt of the mineral reservation in Tract One? The short answer is "no." Moreover, if the mineral reservation was simply lifted from the metes and bounds to the first page of the deed, it would be obvious that it would serve the effect of the reservation. *See Mitchell v. Castellaw, 246 S.W.2d 163*, 164-65 (Tex. 1952). Appellants signed a deed of trust with the exact same mineral reservation.

Mary Lou and her husband would have bought with pasture with or without the mineral estate, RR 3:53, and she conceded that neither she nor the Jessups ever uttered the word "minerals." RR 3:56. Appellants were running cattle on the pasture when they bought it, RR 3:34, and they were still using the pasture for that purpose at the time of trial. RR 3:56. If we are trying to determine the intent of the parties, the intent is clear: Appellants did not intend to purchase the mineral estate. Nowhere in the record does it say that Appellants intended to purchase the mineral estate beneath the pasture.

*Appellants are aware of adverse case law directly on point which is controlling to their single issue, though they never cite or contrast that law to this appeal.*

It is troubling that Appellants, though they have been aware of adverse authority for over a year, CR 2:143-147, do not even make mention of it in their brief. A recent case from San Antonio considered a deed like the one in this case. [Dupnik v. Hermis, No. 04–12–00417–CV](), 2013 Tex. App. Lexis 2461, 2013 WL 979199 (Tex. App.—San Antonio March 13, 2013, pet. denied)(mem. op.)(Ex. 3). In that case, four co-tenants partitioned a nearly 100-acre piece of land in 1983, but the minerals remained undivided. *Id.* at *2. In 1991, Hermis, an original cotenant, conveyed Dupnik, another original cotenant, one surface acre and her 114 mineral interest 1n the acre. *Id.* Hermis did the same thing in 1994 with five acres (the five acres included the previously conveyed one acre). *Id.* Then in 1998 Hermis conveyed her entire 24.68-acre tract to Dupnik. *Id.* The 1998 deed contained the same alleged problem as the deed in this case. The property description in the deed contained an acreage amount and survey, but also relied on a description in the attached Exhibit A. *Id.* at *3. But while the reservation in the deed said "none," the description described tract two as "the surface only." *Id.*

*Dupnik* arose out of the same error as this case: the property description in the 1998 deed was copied out of an older deed. *Id* at *4. Dupnik sued in 2011 for a declaratory judgment on her mineral ownership in the land. *Id.* at *3. The trial court found that the deed unambiguously contained a binding mineral reservation. *Id.* at * 1. The court of appeals affirmed, first because Dupnik's claim to the minerals was barred by limitations, and second because the deed unambiguously contained a binding mineral reservation. *Id.* at * 12, * 15.

Courts must interpret deeds harmoniously to give effect to all their parts. *Id.* at *13-*14. The intent to be enforced is not the parties' subjective intent, but rather the intent "from the language used within the instrument's four comers[.]" *Id.* at * 15. Therefore, "the actual, subjective intent of the parties will not always be given effect even if [the court] were able to discern that subjective intent." *Id.* (internal quotations omitted). Applying those interpretive rules, the court of appeals in *Dupnik* properly found that the reservation of "none" simply meant that the grantor was not retaining the rights "to any of the substances that belong to the surface estate owner." *Id.* (citing *Moser v. US. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984)).

The tract at issue in this case is Tract One of the deed, and the

Jessups stated that the property being conveyed is more particularly described in the exhibit to the Deed. The exhibit describes the location of the tract and states that the conveyance does not include one half of all the minerals beneath the tract. The Deed also contains the following provision under the heading "Exemptions to Conveyance and Warranty:"

Exemptions to Conveyance and Warranty:
Easements, rights-of-way and prescriptive rights, whether of record of not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances and other instruments, other than liens and conveyances, that affect the property.

RR 5:PX-2. In addition, the Deed stated that it incorporated any prior mineral reservations, and there was a prior reservation of one half of the minerals. Accordingly, because one-half of the minerals had been previously reserved and the Jessups were excluding from the description the other half of the minerals, the exhibit was also providing a horizontal boundary and not just vertical boundary lines. The conveyance of Tract One was limited to the surface.

Because the conveyance of Tract One was for the surface only, the part of the deed reserving a life estate in Tract Two does not create an ambiguity. Like in *Dupnik*, where a reservation of "none" did not conflict with a grant of the surface only, the Jessups did not need to reserve anything from Tract One because they did not grant the minerals. *Dupnik*, 2013 Tex. App. Lexis, at *15. Accordingly, the warranty deed unambiguously does not grant any of the minerals in Tract One to

Appellants.

*Appellants did not introduce any evidence of damages at trial, so there is no basis to remand the case on the issue of damages.*

Appellants' request that the case be remanded to the trial court is frivolous and without merit. "The court may not order a separate trial solely on unliquidated damages if liability is contested." TEX. R. APP. P. 44.1(b). The jury did not make a determination of damages. CRS 2:12. While Appellants introduced copies of two checks, RR 5:PX-12, PX-13, they did not elicit any testimony about specifically what those monies related to so that a jury could determine any damages. RR 3:*passim*, 4:*passim*. It is telling that, despite their having sued both EOG and Central Texas Land Services, they did not call any expert witnesses from either of those two appellants or under their own control to testify regarding how monies paid to the Jack Jessup Estate equated to harm to the Appellants. What was that money for? Appellants never offered any testimony on that issue.

## Conclusion

Appellants claims are easy to follow: *they would like to have been deeded the minerals.* Of course, equitably this falls flat. They never negotiated for the mineral estate, they never agreed to purchase the mineral estate, and they would have purchased the pasture with or without the mineral estate—for less than $700 per acre who would not? They bought

the pasture for what they were paying to lease the pasture. The jury understood Appellants' motivations, and their findings reflect the facts: not only did the Appellants not own the mineral estate, there was no mistake in reducing the Jessups' and Alfords' agreement to writing.

Not being able to win on the facts, Appellants are left trying to find some justification for stealing something which doesn't belong to them—a legal do over. Unfortunately for their arguments, they are were done in the trial court. Appellants tried to get the trial court to rule that the mineral reservation was not part of the deed, but when that was successful, they did not bring it up again during the trial, and they waived the issue by not objecting to the trial court's instructions on the mineral reservation. Even had Appellants preserved the issue, they are wrong on the law as the mineral reservation, according to the courts which have addressed similar facts, is incorporated into the Deed. EOG and Central Texas Land Services obviously thought that the Jessups had retained the minerals, and the Appellants attorney, Mr. Muckleroy, also knew that the Deed reserved the minerals. Why else would he have sneaked in a line into the release of lien about the minerals? Thus, Appellant's single issue is wholly without merit, and the judgment of the trial court should be affirmed.

**PRAYER**

Wherefore, Appellee Robert Thomas McKeithen prays this Court to affirm the decision of the trial court for the reasons stated herein and for all other relief to which he is entitled.

Respectfully submitted,

/s/Noel D. Cooper
Noel D. Cooper
Texas Bar No. 00796397
LAW OFFICES OF NOEL D. COOPER
117 North St., Suite 2
Nacogdoches, Texas 75961
Telephone: (936) 564-9000
Telecopier: (936) 715-6022
Email: noelcooper@noelcooper.com
ATTORNEY FOR APPELLANT,
ROBERT THOMAS MCKEITHEN

**CERTIFICATE OF COMPLIANCE**

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that this document is computer generated and contains 2,962 words based on a computer word count.

/s/Noel D. Cooper
NOEL D. COOPER

## CERTIFICATE OF SERVICE

I certify that I delivered a copy of this Brief of Appellee Robert Thomas McKeithen to each attorney of record or party in accordance with the Texas Rules of Appellate Procedure on July 10, 2015, at the addresses and manners below.

Tom Rorie
Attorney for Charles Alford and Mary Lou Alford
Attorney at Law
210 North Street
Nacogdoches, Texas  75961
TEL:  (936) 559-1188
FAX:  (936) 559-0099
Email: trorie@sbcglobal.net
**By Electronic Filing Manager**

Jason R. Mills
Attorney for EOG Resources, Inc. and Central Texas Land Services
Freeman Mills PC
110 N. College, Suite 1400
Tyler, Texas  75702
TEL:  (903) 592-7755
FAX:  (903) 592-7787
Email: eservicejrm@freemanmillspc.com
**By Electronic Filing Manager**

/s/Noel D. Cooper
NOEL D. COOPER

NO.  12-14-00262-CV

**CHARLES ALFORD AND MARY LOU ALFORD,
APPELLANTS**

**VS.**

**ROBERT THOMAS MCKEITHEN, EOG RESOURCES, INC., AND
CENTRAL TEXAS LAND SERVICES,
APPELLEES.**

## APPELLANT'S APPENDIX

## LIST OF DOCUMENTS

1.    Order on Construction by Court of Warranty
      Deed from Jack P. Jessup and Annie Elizabeth
      Jessup to Charles Alford and Mary Lou Alford
      Dated April 25, 2003 ...............................................................Exhibit 1

2.    Charge of the Court............................................................... Exhibit 2

3.    *Dupnik v. Hermis,* No. 04–12–00417–CV,
      2013 Tex. App. Lexis 2461, 2013 WL 979199
      (Tex. App.—San Antonio March 13, 2013,
      pet. denied)(mem. op.) ......................................................... Exhibit 3

| | | |
|---|---|---|
| CHARLES and MARY LOU ALFORD, | § | IN THE DISTRICT COURT |
| Plaintiffs | | |
| | | |
| VS. | | |
| | § | OF |
| ROBERT THOMAS McKEITHEN, | | |
| EOG RESOURCES, INC., and | | |
| CENTRAL TEXAS LAND SERVICES, | | |
| Defendants | § | SAN AUGUSTINE COUNTY, TEXAS |

**FILED**
AT 3:00 O'CLOCK P M
5-7 2014
JEAN STEPTOE District Clerk
SAN AUGUSTINE, TEXAS
BY _____

**ORDER ON CONSTRUCTION BY COURT OF
WARRANTY DEED FROM JACK P. JESSUP AND
ANNIE ELIZABETH JESSUP TO CHARLES ALFORD
AND MARY LOU ALFORD DATED APRIL 25, 2003**

On this the ____6____ day of May, 2014, came on to be considered Plaintiffs' Motion for Court to Construe Document Prior to Evidence and Submission of Issues to Jury in Trial. All parties were present and also appeared by and through counsel of record. The Court considered the motion, the arguments of counsel and the authorities provided by them, and makes the following ruling and order:

It is ORDERED that the Warranty Deed from Jack P. Jessup and Annie Elizabeth Jessup to Charles Alford and Mary Lou Alford dated April 25, 2003, is, as a matter of law:

Ambiguous ____✓____          Not Ambiguous _____

It is further ORDERED that under the rules of construction of documents that the language stating a mineral reservation found in the description of a 117 acre tract described as Tract 1 in Exhibit "A" attached to that deed:

Is Incorporated into the Deed ____✓____ Is not Incorporated into the Deed _____

**EXHIBIT 1**

SIGNED this the ___6___ day of May, 2014.

JUDGE PRESIDING

| | | |
|---|---|---|
| CHARLES and MARY LOU ALFORD | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | OF |
| ROBERT THOMAS McKEITHEN; | § | |
| EOG RESOURCES, INC.; and | § | |
| CENTRAL TEXAS LAND SERVICES | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | SAN AUGUSTINE COUNTY, TEXAS |



FILED
AT /·15 O'CLOCK P M
5-7 20 14
JEAN STEPTOE District Clerk
SAN AUGUSTINE, TEXAS
BY

## CHARGE OF THE COURT

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. [The Court will give you a number where others may contact you in case of an emergency.]

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.    Do not let bias, prejudice, or sympathy play any part in your decision.    EXHIBIT 2

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence [unless you are told otherwise]. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence [unless you are told otherwise].

7. The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

8. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

9. Do not answer questions by drawing straws or by any method of chance.

10. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

11. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

12. The answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

Presiding Juror:

1.      When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.      The presiding juror has these duties:

      a.      have the complete charge read aloud if it will be helpful to your deliberations;

      b.      preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

      c.      give written questions or comments to the bailiff who will give them to the judge;

      d.      write down the answers you agree on;

      e.      get the signatures for the verdict certificate; and

      f.      notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

Instructions for Signing the Verdict Certificate:

- You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

- If 10 jurors agree on every answer, those 10 jurors sign the verdict.

- If 11 jurors agree on every answer, those 11 jurors sign the verdict.

- If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

- All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

JUDGE PRESIDING

# DEFINITIONS

Throughout this charge, the following terms shall have the meaning indicated:

1. "The Alfords" means the Plaintiffs Charles Alford and Mary Lou Alford.

2. "The Jessups" means Jack P. Jessup and Annie Elizabeth Jessup.

3. "McKeithen" means Defendant Robert Thomas McKeithen, in all his capacities.

4. "EOG" means Defendant EOG Resources, Inc.

5. "Central Texas Land Services" means Defendant Central Texas Land Services.

6. The "Deed" means the April 25, 2003 Warranty Deed with Vendor's Lien from the Jessups to the Alfords.

7. "Tract One" means the 117.50 acre tract of land located about seven miles west of San Augustine, Texas, and that is more particularly described as Tract One in the Deed.

# QUESTION NO. 1

**Question:**

Have the Alfords proved that they have title to an undivided one-half of the mineral estate beneath Tract One?

**Instruction:**

To establish title, the Alfords must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned.

The Alfords may prevail only on the superiority of their title, not on the weakness of McKeithen's title.

You are instructed that it is undisputed that prior to executing the Deed, the Jessups owned an undivided one-half of the minerals beneath Tract One. The question of fact for you to decide is whether the Deed reserved or conveyed the mineral interest. If it reserved the mineral interest answer "No," and if it conveyed the mineral interest answer "Yes."

You are further instructed that Exhibit A was incorporated into the Deed.

You are further instructed that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed.

**Answer:**

Answer "Yes" or "No." _no_

## QUESTION NO. 2

If you answered "No" to Question No. 1, then answer this question. Otherwise do not answer this question.

**Question:**

Have the Alfords proved that the Deed should be reformed such that the reservation of minerals in Exhibit A of the Deed should be removed?

**Instruction:**
To be entitled to a reformation of the Deed, the Alfords must prove that (1) there was an agreement before the Deed was written; and (2) there was a mutual mistake, made after the original agreement, in reducing the agreement to writing that to does not reflect the agreement of the parties to the Deed.

You are instructed that to prove a "mutual mistake," the Alfords must prove (1) a mistake of fact, (2) held mutually by the parties to the Deed, (3) and which materially affects the subject matter of the Deed.

You are further instructed that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed.

**Answer:**
Answer "Yes" or "No." _No_

## QUESTION NO. 3

If you answered "Yes" to Question No. 2, then answer this question. Otherwise do not answer this question.

**Question:**
Have the Alfords proved that they exercised due diligence in reviewing the Deed?

**Instruction:**
You are instructed that the standard of diligence in reviewing the Deed is that diligence an ordinary prudent person would have used under the same or similar circumstances.

**Answer:**
Answer "Yes" or "No." _No_

# QUESTION NO. 4

If you answered "Yes" to Question No. 3, then answer this question. Otherwise do not answer this question.

**Question:**
By what date did the Alfords discover, or should have discovered by exercising reasonable care and diligence, the reservation of minerals for Tract One in Exhibit A to the Deed?

**Instruction:**
You are instructed that the standard of diligence in reviewing the Deed is that diligence an ordinary prudent person would have used under the same or similar circumstances.

**Answer:**
Answer by inserting a specific, month, day and year. _____

## REQUESTED QUESTION NO. 5

If you answered "Yes" to Question No. 1 or "Yes" to Question No. 2, then answer this question. Otherwise do not answer this question.

**Question:**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Alfords for the damages, if any, that resulted from the minerals beneath Tract One being leased?

**Instruction:**

You shall consider only the difference, if any, between the royalty the Alfords received and the royalty the Alfords would have received had the Jessups or McKeithen not claimed title to one-half of the minerals beneath Tract One.

Do not add any amount for interest on damages, if any.

**Answer:**

Answer in dollars and cents, if any. $_____

CV-12-9344

# VERDICT CERTIFICATE

If the verdict is unanimous, the presiding juror should sign below.

_____
Presiding Juror

If the verdict is not unanimous, then the deciding jurors should sign below.

1. _Michael Dohead_      2. _Adam Scellan Jr_

3. _Michael A Burch_      4. _Celia Mashburn_

5. _____      6. _LaDuicz ber_

7. _Judie Caraway_      8. _Darlene Williamson_

9. _Tony Bennefield_      10. _Wanda Bedell_

11. _____

**FILED**
AT _4:00_ O'CLOCK _P_ M
_5-7_ 20_14_
JEAN STEPTOE District Clerk
SAN AUGUSTINE, TEXAS
BY _____

# BILL OF COSTS

## CV-12-9344

**Charles Alford & Mary Lou Alford**

**Vs.**

**Robert Thomas McKeithen, EOG Resource Inc., & Central Texas Land Services**

Costs to prepare transcript for the above case is $15.00 and has been paid.

I hereby certify that the above amounts are correct and true.

Jean Steptoe, District Clerk

14

## CLERK'S CERTIFICATE

The State of Texas       {

County of San Augustine     {


    I, Jean Steptoe, Clerk of the District Courts in and for San Augustine County, State

of Texas do hereby certify that the above and foregoing, are true and correct copies of

all the proceedings directed by counsel to be included in the transcript in the case

of   Charles Alford & Mary Lou Alford   vs. Robert Thomas McKeithen, EOG Resources

Inc., & Central Texas Land Service in   Cause No.___CV-12-9344___ ,

as the same appear from the originals now on file and of record in  this office.

    Given under my hand and seal of said Court at office in the City of San Augustine,

on the_____1_____ day of JuLY, 2015.



Jean Steptoe
District Clerk
San Augustine, Texas

15

**Cynthia DUPNIK Appellant**
**v.**
**Hermina HERMIS, Appellee**
**No. 04-12-00417-CV**
**Fourth Court of Appeals San Antonio, Texas**
**Delivered and Filed: March 13, 2013**

**MEMORANDUM OPINION**

From the 81st Judicial District Court, Karnes County, TexasTrial Court No. 11-11-00269Honorable Donna S. Rayes, Judge Presiding

Opinion by: Catherine Stone, Chief Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

AFFIRMED AS MODIFIED

Cynthia Dupnik appeals the trial court's denial of her motion for summary judgment and the grant of Hermina Hermis's motion for summary judgment, which declared that Hermis owned title to the mineral interest in land conveyed by Hermis to Dupnik in 1998. Specifically, Dupnik asserts that the 1998 deed was ambiguous and the trial court erred by not considering the circumstances surrounding the conveyance in determining the intention of the parties. Hermis responds that the deed unambiguously grants Dupnik the surface estate only, and that the suit is barred by the statute of frauds and the statute of limitations.

Page 2

**BACKGROUND**

Marcine Dupnik, Hermina Hermis, Emma Dunaubauer, and M.E. Syring each owned an undivided one-fourth interest in both the surface and the minerals of an approximately one-hundred acre tract in Karnes County, Texas. In 1983, these individuals agreed to partition the surface estate into four equal parts (24.68 acres each), but each maintained an undivided one-fourth mineral interest in the entire one-hundred acre tract.

On February 19, 1991, Hermis deeded to Dupnik and her husband one acre out of Hermis's partitioned 24.68 acres (the "1991 deed"). Both parties agree the 1991 deed conveyed both the surface and Hermis's undivided one-fourth mineral interest in the acre.

On October 28, 1994, Hermis deeded to Dupnik and her husband five acres out of Hermis's partitioned 24.68 acres (the "1994 deed"). The five acres conveyed in the 1994 deed included the one acre conveyed in the 1991 deed, and, again, both parties agree the 1994 deed conveyed both the surface and Hermis's undivided one-fourth mineral interest in all five acres.

On August 27, 1998, Hermis and Dupnik again engaged in a conveyance of Hermis's property in Karnes County. The deed resulting from this conveyance is the subject of this suit and will be referred to as the "1998 deed." The relevant portion of the 1998 deed recites the following:

> PROPERTY (including any improvements)
>
> 24.68 acres out of the E. Seguin Survey, Karnes County, Texas, and fully described in Exhibit A.
>
> RESERVATIONS from and Exceptions to Conveyance and Warranty:
>
> None

Exhibit A titles the property described as "Tract No. Two: (the surface only)" and then gives the metes and bounds description for Hermis's tract from the 1983 partition deed. On



EXHIBIT 3

November 2, 2011, over thirteen years after the 1998 deed was signed, Dupnik filed suit against

Page 3

Hermis requesting the trial court to declare Dupnik the owner of the undivided one-fourth mineral interest in the entire one-hundred acre tract. Hermis filed an answer, a counterclaim for trespass to try title, and a motion for summary judgment alleging that the suit was barred by the statute of frauds and the statute of limitations, and because the grant of the surface estate only reserved title to the mineral estate as a matter of law. Dupnik also filed a cross-motion for summary judgment essentially asserting that the "surface only" language was erroneously entered in the description because the property description was merely copied and pasted from the 1983 partition deed. Dupnik alleged the parties' true intent could be ascertained from the previous conveyances (the 1991 and 1994 deeds) and contracts for sale between the parties. Finding no genuine issue of material fact, the trial court granted Hermis's motion for summary judgment, determining Hermis was entitled to judgment in her favor as a matter of law, and denied Dupnik's motion for summary judgment.

On appeal, Dupnik claims the trial court erred in granting Hermis's motion for summary judgment because there is a patent internal conflict within the 1998 deed, and the trial court erred in failing to consider the prior conveyances between the parties and the contract for sale for the 1998 deed. Specifically, Dupnik complains the grant of the surface estate only and the reservation of "none" are irreconcilable because a grantor must specifically reserve any rights associated with the mineral estate. Dupnik also asserts that because she filed a verified affidavit in support of her motion for summary judgment and Hermis did not, the trial court erred in granting summary judgment in Hermis' favor because Dupnik's verified pleading carried more weight. Lastly, Dupnik complains that the summary judgment entered by the trial court does not conform to the pleadings and grants relief not requested by Hermis. Hermis, in addition to contesting Dupnik's arguments,

asserts that Dupnik's claim is barred by the statute of frauds and the statute of limitations.

Page 4

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003); *Longoria v. Lasater,* 292 S.W.3d 156, 162 (Tex. App.—San Antonio 2009, pet. denied). A party should be granted summary judgment only if it proves all elements of its cause of action or affirmative defense. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex. 2001); *see also TIG Ins. Co. v. San Antonio YMCA,* 172 S.W.3d 652, 655-56 (Tex. App.—San Antonio 2005, no pet.). When both parties file motions for summary judgment and the trial court grants one motion and denies the other, the reviewing court must consider the evidence presented by both parties and determine all questions presented to the trial court. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872-73 (Tex. 2000); *TIG Ins. Co.,* 172 S.W.3d at 655-56. It is the duty of a reviewing court to "render the judgment that the trial court should have rendered." *Wolf,* 44 S.W.3d at 566; *see also FM Props. Operating Co.,* 22 S.W.3d at 872-73.

## STATUTE OF LIMITATIONS

Hermis contends Dupnik's suit is barred by the four-year statute of limitations. In response, Dupnik first argues that a court always "has an inherent right to properly interpret instruments." Dupnik, however, cites no authority, and we can find none, supporting the proposition that courts retain an inherent right to litigate title disputes after the statute of limitations expires. Dupnik next argues that even if the statute of limitations applies, the discovery rule deferred the accrual of limitations in this case.

### A. Applicable Statute of Limitations

This is a trespass to try title suit where the parties are seeking interpretation of a deed. *See Longoria,* 292 S.W.3d at 165 ("A suit to resolve



a dispute over title to land is, in effect, a trespass to try title action regardless of the form the action takes and whether legal or equitable

Page 5

relief is sought."). To determine the applicable statute of limitations in a trespass to try title suit where parties dispute the title conveyed, we must determine whether the deed is void or voidable.[1] *Slaughter v. Qualls,* 162 S.W.2d 671, 674 (Tex. 1942); *Garcia v. Garza,* 311 S.W.3d 28, 42 (Tex. App.—San Antonio 2010, pet. denied).

If the deed is void, the cause of action will not be barred by the statute of limitations. *Ford v. Exxon Mobil Chem. Co.,* 235 S.W.3d 615, 618 (Tex. 2007); *Garcia,* 311 S.W.3d at 42. A deed is void if it is "without vitality or legal effect." *Slaughter,* 162 S.W.2d at 674 (quoting *Smith v. Thornhill,* 25 S.W.2d 597, 600 (Tex. Comm'n App. 1926)) (internal quotation marks omitted). Conversely, if a deed is merely voidable, the four-year statute of limitations will apply to the suit. *Ford,* 235 S.W.3d at 618; *Garcia,* 311 S.W.3d at 42. A deed is voidable if it "operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained or declared." *Slaughter,* 162 S.W.2d at 674 (quoting *Smith,* 25 S.W.2d at 600) (internal quotation marks omitted).

If an instrument is legally effective when suit is brought and at least one party's claim to title requires the court to exercise its equitable powers before title can be determined, the instrument is not in and of itself void. *Pure Oil Co v. Ross,* 111 S.W.2d 1076, 1078 (Tex. 1938); *Neill v. Pure Oil Co.,* 101 S.W.2d 402, 404 (Tex. Civ. App.—Dallas 1937, writ ref'd). In *Ford v. Exxon Mobil Chemical Co.,* the Texas Supreme Court rejected the appellate court's conclusion that an equitable action to quiet title is not subject to the statute of limitations. 235 S.W.3d at 618. The supreme court explained that "an equitable action to remove cloud on title is not subject to limitations if a deed is void or has expired by its own terms." *Id.* However, a party

Page 6

may not attack a facially valid, and thus voidable, deed merely by pleading in equity. *Id.* at 619. "When a deed is merely voidable, equity will not intervene as the claimant has an adequate legal remedy." *Id.* at 618.

The 1998 deed at issue in this case was legally effective when signed because it validly granted Dupnik the surface estate. The term "none" used in the reservation clause does not in and of itself render the deed invalid because it can be read as simply reserving no rights to the substances belonging to the surface estate owner. *See Moser v. U.S. Steel Corp.,* 676 S.W.2d 99, 102 (Tex. 1984) (listing substances that belong to the surface estate as a matter of law); *Poag v. Flories,* 317 S.W.3d 820, 827 (Tex. App.—Fort Worth 2010, pet. denied) (indicating that a conveyance of the "surface estate only" provides the grantee notice that he owns only the surface estate). Therefore, the deed in this case is voidable because it is facially effective and any ambiguity or error would be found only after a court looked behind the instrument to determine the intention of the parties.

### *B. Discovery Rule*

In response to Hermis's assertion that Dupnik's cause of action is barred by the statute of limitations, Dupnik claims the discovery rule prevents limitations from barring this suit. Dupnik has likely waived the ability to assert the discovery rule in avoidance of the statute of limitations. If this rule is not pleaded in an original, amended, or supplemental petition and the party does not secure findings on its applicability, the claim is waived. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex. 1988); *Morriss v. Enron Oil & Gas Co.,* 948 S.W.2d 858, 868 (Tex. App.—San Antonio 1997, no writ). Even if the claim was not waived, it would fail on its merits.

As a general rule, a cause of action accrues when the legal injury occurs, regardless of when the legal injury is discovered or when all of the



resulting damages occur. *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996). Some cases, however, present an exception to this rule that defers

Page 7

accrual of limitations until the plaintiff "knew or through the exercise of diligence should have known of the wrongful act and resulting injury." *Id.* (citing *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex. 1994)). This exception is also known as the "discovery rule." *Id.* at 6. The discovery rule provides relief to wronged parties when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex. 1996)) (internal quotation marks omitted). Despite the equitable effect of the discovery rule in some cases, "[t]he fact that a meritorious claim might . . . be rendered nonassertible is an unfortunate, occasional by-product of the operation of limitations." *Id.* (quoting *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex. 1990)) (internal quotation marks omitted).

First, Dupnik claims "[i]t was impossible to know the exact meaning of the contradictory terms in the 1998 deed [or] to know that she had suffered a legal harm unless and until [Hermis] attempted to assert claims adverse to [Dupnik]." This argument contradicts her claim that the ambiguity was patent and obvious on the face of the instrument. Regardless, the fact that Dupnik may not have understood the exact meaning of the allegedly contradictory terms does not negate that, by her very own admission, the terms of the instrument appear facially problematic to her. With due diligence, she would have learned of the alleged mistake.

An instrument that describes the property as "surface only" in contravention of the parties' alleged intent is not the type of inherently undiscoverable injury contemplated by the discovery rule. An inherently undiscoverable injury is one that is "by nature unlikely to be discovered within the prescribed limitations

period despite due diligence." *Id.* at 7. In her Responses to Request for Admissions, Dupnik denied that she read all parts of the 1998 deed when it was delivered to her by Hermis. As such, there can be little doubt that due diligence was

Page 8

not exercised. Dupnik's claim fails for two reasons: (1) it was not an inherently undiscoverable defect; and (2) due diligence was not exercised. Thus, the discovery rule is inapplicable to prevent this case from being barred by limitations.

**APPLYING RULES OF INTERPRETATION/CONSTRUCTION TO 1998 DEED**

Even if this suit were not barred by the statute of limitations, Dupnik's claim would fail under the rules of interpretation/construction. Dupnik contends that the 1998 deed is ambiguous and that without looking to the history of transactions between the parties, there is a facially "irreconcilable internal conflict" in the 1998 deed because it purports to convey only the surface estate without reserving the mineral estate. This court is urged to look to the 1991 and 1994 deeds, which conveyed the mineral interests along with the surface estates, and the contract for sale of the 1998 deed, which did not include "surface only" language, to determine the parties' intent to convey the mineral estate in the 1998 deed as well.

In *Terrill v. Tuckness,* this court set out a three-step interpretation process: (1) "ascertain the grantor's intent by examining the plain language of the deed"; (2) apply the appropriate rules of construction; and then (3) allow extrinsic evidence to aid in interpretation. 985 S.W.2d 97, 102 (Tex. App.—San Antonio 1998, no pet.). Courts reach the third step of admitting extrinsic evidence only if the grantor's intent remains unclear after the rules of construction are applied. *Longoria,* 292 S.W.3d at 166 (citing *Terrill,* 985 S.W.2d at 102). "An instrument is ambiguous *only* when the application of the



rules of construction leaves it unclear which meaning is the correct one." *Id.*; *Terrill,* 985 S.W.2d at 102. When construing a deed, we try to determine the intent of the parties by considering the instrument as a whole, attempting "to harmonize and give effect to all the provisions of the agreement, even if different parts of the deed appear inconsistent or contradictory." *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966

Page 9

S.W.2d 451, 454 (Tex. 1998); *Hausser v. Cuellar,* 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied).

A reservation of minerals must be by clear language, and "[c]ourts do not favor reservations by implication." *Sharp v. Fowler,* 252 S.W.2d 153, 154 (Tex. 1952). At least one Texas court, however, has considered a grant of only the surface estate to be a clear reservation of the mineral estate. *See Large v. T. Mayfield, Inc.,* 646 S.W.2d 292, 294 (Tex. App.—Eastland 1983, writ ref'd n.r.e.) (holding that a grant of "the Surface Rights" conveyed only the surface estate); *see also Poag,* 317 S.W.3d at 827 (suggesting that the language "surface estate only" conveys only the surface estate). Moreover, a reservation "is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant." *King v. First Nat'l Bank of Wichita Falls,* 192 S.W.2d 260, 262 (Tex. 1946); *see also Hunsaker v. Brown Distrib. Co.,* 373 S.W.3d 153, 158 (Tex. App.—San Antonio 2012, pet. denied) (concluding that even though Hunsaker did not specifically reserve one-half of the mineral estate he owned, Brown only received one-half of Hunsaker's mineral estate because Hunsaker only conveyed one-half of the mineral estate to Brown).

Harmonizing the "surface only" language with the reservation of "none" leads to the conclusion that the intent reflected in the document was to convey the surface estate without retaining rights to any of the substances that belong to the surface estate owner. *See*

*Moser,* 676 S.W.2d at 102 (listing substances that belong to the surface estate as a matter of law). As the Supreme Court of Texas has recognized, because we are required to ascertain the parties' intent from the language used within the instrument's four corners, "the actual, subjective intent of the parties will not always be given effect even if we were able to discern that subjective intent." *Concord Oil Co.,* 966 S.W.2d at 454. Because Dupnik's cause of action is barred by the statute

Page 10

of limitations, we need not address the parties' remaining claims regarding the statute of frauds, the attachment of a verified affidavit, and relief not requested.

**CORRECTION OF JUDGMENT**

Upon review of the judgment and relevant deeds in the case, we noticed that the judgment mistakenly excepted Dupnik's mineral interest from an improper tract of land, thereby incorrectly awarding Hermis a mineral interest under all 24.58 acres of Dupnik's surface estate. An appellate court has the authority to modify an incorrect judgment, even without a party's request, when the record contains the necessary information to do so. TEX. R. APP. P. 43.2(b); *Hutton v. State,* 313 S.W.3d 902, 909 (Tex. App.—Amarillo 2010, pet. ref'd); *In re T.P.,* 251 S.W.3d 212, 215 (Tex. App.—Dallas 2008, no pet.).

The judgment purports to identify the parties' respective mineral interests in the entire one-hundred acres partitioned in 1983. A review of the deeds in this case revealed that tracts one, three, and six are the 24.68 acre tracts owned by the other three parties to the 1983 partition. Tract two in the judgment is the 24.68 acre tract that was owned by Hermis after the 1983 partition. Tracts four and five described in the judgment are the tracts conveyed to Dupnik by Hermis in the 1991 and 1994 deeds. In accordance with the 1998 deed, the judgment properly provides that Hermis has an undivided 25% interest in the minerals under tracts one and



three. The judgment also correctly provides that Dupnik has an undivided 25% mineral interest in tracts four and five.

It appears, however, that the trial court's judgment confused tracts two and six and incorrectly excepted Dupnik's mineral interest in tracts four and five from Hermis's mineral interest in tract six instead of tract two. The judgment should reflect that Hermis has an undivided 25% mineral interest in tract six with no exception. The judgment should also reflect that Hermis has an undivided 25% mineral interest in tract two, save and except Dupnik's

Page 11

undivided 25% mineral interest in tracts four and five (described as tracts A and B in the incorrect portion of the judgment excepting these tracts from Hermis's undivided 25% mineral interest in tract six). Accordingly, we modify the judgment to reflect these changes.

**CONCLUSION**

We conclude the four-year statute of limitations applies and the discovery rule does not prevent its accrual in this case. Consequently, we affirm the judgment of the trial court as modified to reflect the parties' actual interests in the one-hundred acres.

Catherine Stone, Chief Justice

--------

Notes:

[1.] This appears to be the correct approach in all cases where the title dispute originates from a conveyance (as opposed to adverse possession), despite its characterization as a suit for trespass to try title, a suit to quiet title, or a suit to remove cloud on title. *See Ford v. Exxon Mobil Chem. Co.,* 235 S.W.3d 615, 618 (Tex. 2007) (approving of this approach for suits to quiet title/remove cloud on title); *Slaughter v. Qualls,* 162 S.W.2d 671, 674 (Tex. 1942) (applying this standard in a trespass to try title suit).

--------

